NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN B. CUNDIFF and BARBARA C. CUNDIFF, husband and wife;
ELIZABETH NASH, a married woman dealing with her separate
property; KENNETH PAGE and KATHRYN PAGE, as Trustee of the
Kenneth Page and Catherine Page Trust; JAMES VARILEK, as Joined
Plaintiff property owner, *Plaintiffs/Appellees*,

*v.*

DONALD COX and CATHERINE COX, husband and wife,
*Defendants/Appellants*.

No. 1 CA-CV 15-0371
FILED 11-3-2016

Appeal from the Superior Court in Yavapai County
No. P1300CV2003-0399
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*
The Honorable Kenton D. Jones, Judge
The Honorable David L. Mackey, Judge

**AFFIRMED**

COUNSEL

J. Jeffrey Coughlin, P.L.L.C., Prescott
By J. Jeffrey Coughlin
*Counsel for Plaintiffs/Appellees*

Favour & Wilhelmsen, P.L.L.C., Prescott
By David K. Wilhelmsen, Lance B. Payette
*Counsel for Plaintiff/Appellee James Varilek*

Musgrove Drutz Kack & Flack, P.C., Prescott
By Mark W. Drutz, Sharon M. Flack, Jeffrey Gautreaux
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Justice Rebecca White Berch[1] joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　　Defendants Donald and Catherine Cox (collectively, "the Coxes") appeal the trial court's summary judgment in favor of Plaintiffs John B. and Barbara C. Cundiff; Elizabeth Nash; Kenneth and Kathryn Page, as Trustee of the Kenneth Page and Catherine Page Trust (collectively, "the Cundiffs"); and James Varilek (collectively, "Appellees") after a more than decade-long dispute over the Coxes' use of their property as a tree and shrub farm supporting their agricultural business in violation of an applicable Declaration of Restrictions ("the Declaration"). The trial court granted summary judgment in favor of Appellees after concluding the Coxes' defenses of waiver and/or abandonment of the Declaration failed as a matter of law. Raising several issues, the Coxes challenge the grant of summary judgment and the court's awards of attorneys' fees to Appellees. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[2]

**¶2**　　　　The parties own property in a rural, residential subdivision known as Coyote Springs Ranch. The Coxes began using their property for growing and storing inventory for Prescott Valley Nursery and Prescott

---

[1]　　　The Honorable Rebecca White Berch, Retired Justice of the Arizona Supreme Court, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

[2]　　　We take a portion of the facts and underlying procedural history from our previous memorandum decision involving the Cundiffs and Coxes. *See Cundiff v. Cox*, 1 CA-CV 06-0165 (Ariz. App. May 24, 2007).

Valley Growers, the retail and wholesale nursery business they own in partnership with their two sons. Partnership employees work at the Coxes' property, but the property is not open to the public, and no sales are conducted on it. The Coxes also live on the property part-time.

¶3         In 2001, the Coxes applied for an agricultural use exemption for the property from Yavapai County. As part of the application for the exemption, Catherine Cox signed a Statement of General Agricultural Use and Affidavit, acknowledging that the primary use of the property is an "agricultural use"; "[a]ny residential use of this property is secondary."

¶4         Properties located in Coyote Springs Ranch are subject to the aforementioned Declaration. Section one of the Declaration provides that all included parcels "shall be known and described as residential." Section two provides that "[n]o trade, business, profession or any other type of commercial or industrial activity shall be [initiated] or maintained within said property or any portion thereof." Section nineteen contains a non-waiver clause that provides in part as follows:

> 19.     If there shall be a violation or threatened or attempted violation of any of said covenants, conditions, stipulations or restrictions, it shall be lawful for any person or persons owning said premises or any portion thereof to prosecute proceedings at law or in equity against all persons violating or attempting to, or threatening to violate any such covenants, restrictions, conditions or stipulations, and either prevent them or him from so doing or to recover damages or other dues for such violations. *No failure of any other person or party to enforce any of the restrictions, rights, reservations, limitations, covenants and conditions contained herein shall, in any event, be construed or held to be a waiver thereof or consent to any further or succeeding breach or violation thereof. . . .*

(Emphasis added.)

¶5         In May 2003, the Cundiffs filed a complaint for injunctive relief against the Coxes, and later added a request for declaratory relief, alleging in part that the Coxes' use of the property violated section two of the Declaration. In response, the Coxes asserted the defenses of abandonment, waiver, estoppel, laches, and unclean hands.

¶6         The Cundiffs filed two motions for partial summary judgment—the first asserting the Coxes' waiver defense was precluded by

section nineteen of the Declaration, and the second arguing the Coxes' use of their property violated section two of the Declaration and that the Coxes could not prove their defenses of estoppel, laches, and unclean hands.

¶7 The trial court (Judge David L. Mackey) denied the motion for partial summary judgment as to the waiver issue after finding "a material factual issue regarding whether the restrictions . . . have been so thoroughly disregarded as to result in a change in the area that destroys the effectiveness of the restrictions, defeats the purposes for which they were imposed[,] and amounts to an abandonment of the entire Declaration of Restrictions." The court reasoned that, if the entire Declaration had been abandoned, section nineteen, on which the Cundiffs based their anti-waiver argument, would also have been abandoned.

¶8 As to the Cundiffs' second motion for partial summary judgment, the trial court granted the motion as to the Coxes' defenses of estoppel, laches, and unclean hands, but denied the motion to the extent it sought a summary declaration as to the enforceability of the Declaration. The court scheduled trial for August 2, 2005.

¶9 Before trial, the court denied a motion by the Coxes entitled "Motion to Join Indispensable Parties Pursuant to Rule 19(A), Ariz. R. Civ. P., or, in the Alternative, Motion to Dismiss Pursuant to Rule 12(B)(7), Ariz. R. Civ. P., for Failure to Join Indispensable Parties." In the motion, the Coxes had argued that all persons who owned property governed by the Declaration must be joined because their legal rights could be substantially affected by the outcome of the case.

¶10 The Coxes also filed a motion for partial summary judgment, arguing the use of their property was "agricultural" and, therefore, did not violate section two of the Declaration—the restriction barring trade, business, professional, or other industrial or commercial activity. The trial court, after noting that "restrictions are not favored and [] must be strictly construed," granted that motion and entered partial judgment in favor of the Coxes on all counts in the complaint relying on the Coxes' alleged violation of section two of the Declaration. The parties agreed this ruling was critical to the remaining issues and agreed to a form of judgment that could be immediately reviewed on appeal.

¶11 Both parties appealed, and in a memorandum decision filed May 24, 2007, this court affirmed in part, reversed in part, and remanded. *See Cundiff v. Cox*, 1 CA-CV 06-0165. Noting that the trial court had interpreted existing Arizona case law to hold that restrictions are not

favored and must be strictly construed, but further noting that, at the time of its ruling, the trial court did not have the benefit of our supreme court's then-recent pronouncement in this area, *Powell v. Washburn*, 211 Ariz. 553, 125 P.3d 373 (2006)—which rejected the very rule of construction relied on by the trial court—we concluded that "[t]he Coxes' tree farm is clearly an agricultural business" and "nothing in the Declaration suggests that any one type of business was intended to be excluded from section two of the restrictions." *Cundiff*, 1 CA-CV 06-0165, at ¶¶ 13, 17. Accordingly, application of section two to the Coxes' use of their property was "consistent with the Declaration as a whole." *Id.* at ¶ 18. We further noted that both parties relied on the affidavit of Robert Conlin, an original grantor responsible for preparation and recording of the Declaration, and that as confirmed in Conlin's affidavit, the intent underlying the Declaration was to "ensure[] not only a rural setting, but a rural, residential environment." *Id.* at ¶ 20. Given that interpretation, we concluded "the Coxes' agricultural business use of the property violates section two of the Declaration," and we therefore vacated the judgment against the Cundiffs. *Id.* at ¶¶ 20-21.

¶12        As to the Coxes' appeal, we affirmed the trial court's grant of summary judgment regarding the defenses of estoppel, laches, and unclean hands, *id.* at ¶¶ 20-27, leaving only the defense of abandonment (of the Declaration and, accordingly, section nineteen's non-waiver clause) to be decided. Finally, in addressing the trial court's denial of the Coxes' motion for joinder, we noted that "[a] ruling in this case that the restrictions have been abandoned and are no longer enforceable against the Coxes' property would affect the property rights of all other owners subject to the Declaration." *Id.* at ¶ 32. We concluded "that the absent property owners are necessary parties given the issue to be decided in this case" and must be joined, and directed the trial court to "determine on remand whether these parties are also indispensable under Rule 19(b)," Ariz. R. Civ. P. *Id.* at ¶ 36.

¶13        On remand, the trial court determined that the other property owners subject to the Declaration were indispensable parties, and ordered the Cundiffs to serve and join all necessary and indispensable parties. The Cundiffs took substantial steps to do so, and in April 2011, filed a notice of compliance with the court's order.[3] The case was reassigned to Judge

---

[3]        At a subsequent oral argument on February 13, 2013, counsel for the Coxes was asked by the court whether "all necessary parties have been joined as parties to this lawsuit," and counsel responded affirmatively, although he expressed concern that "no lis pendens was ever recorded" to

Kenton D. Jones on June 30, 2011, after Varilek filed a notice of change of judge pursuant to Rule 42(f), Ariz. R. Civ. P.[4]

¶14 Although the trial court had previously denied the Cundiffs' partial motion for summary judgment on the issue of waiver (after concluding a question regarding abandonment existed), the Cundiffs filed a new motion for summary judgment and supporting statement of facts addressing the only two issues remaining in the case: abandonment and waiver. In their motion, the Cundiffs argued that, at the time the trial court made its initial rulings, the court not only did not have the benefit of *Powell*, it also did not have the benefit of this court's decision in *College Book Centers, Inc. v. Carefree Foothills Homeowners' Association*, 225 Ariz. 533, 241 P.3d 897 (App. 2010), which the Cundiffs argued was analogous. Relying on *College Book Centers*, the Cundiffs maintained that because the Declaration contained a non-waiver provision in section nineteen, that non-waiver provision was enforceable, even despite prior violations of the Declaration, as long as the violations did not constitute a "complete abandonment" of the Declaration. *See* 225 Ariz. at 539, ¶ 18, 241 P.3d at 903. The Cundiffs argued the overall character of the development—which we had characterized in our 2007 memorandum decision as "a rural, residential environment"—had not undergone the fundamental change required to constitute legal abandonment.[5]

---

put subsequent property owners on notice of the lawsuit "should they take ownership of the property."

[4] In 2009, Varilek filed a separate complaint seeking to enforce the restrictive covenants against another property owner, Robert Veres, and despite Varilek's objection, that case was consolidated with the Cundiffs' case against the Coxes upon motion by Veres after both Varilek and Veres were served and joined in this case. Varilek's 2009 case had originally been assigned to Judge Mackey, but Varilek had timely exercised his right to a change of judge in that case, and upon consolidation, he again filed a notice of change of judge. In February 2013, Varilek and Veres filed a stipulation to dismiss Varilek's 2009 complaint without prejudice, which the trial court granted. Varilek, however, continued to actively participate in this case.

[5] Section three of the Declaration restricts parcels in Coyote Springs Ranch to no less than nine acres. The Cundiffs attached to their "Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment" an affidavit from John Cundiff stating that, to the best of his knowledge, lots

**¶15** After responsive briefing by the parties[6]—including Varilek and Veres—the trial court heard oral argument on April 16, 2013, and took the matter under advisement.[7] In a detailed minute entry filed June 14,

___

in the subdivision continued to contain no less than nine acres and that the three DVDs attached to his affidavit were video recordings that accurately depicted the appearance of the subdivision. Later, in their reply, the Cundiffs provided records from the Yavapai County Assessor's Office that indicated 280 of the 288 properties subject to the Declaration still consisted of at least nine acres.

[6] In addition to affidavits and other documents they had previously submitted, the Coxes responded with affidavits from their son and a licensed private investigator, Sheila Cahill, who they hired to search through the Coyote Springs Ranch development and document any uses or activities that arguably violated the deed restrictions. The Coxes' proof of abandonment largely consisted of photographs showing properties with any alleged or speculated violations, including but not limited to properties with a visible propane or water tank, a trash receptacle in open view, an "[e]xcessive amount of dogs," structures or sheds that "may not comply" with square footage requirements, multiple buildings, trash in the yard and/or overgrown weeds, and properties on which the residents had parked business vehicles, mobile homes, or trailers, or placed construction materials on the lots. The Coxes also presented evidence that some of the property owners had listed their Coyote Springs Ranch address when obtaining business and contractor's licenses, listing corporate addresses, etc., and asserted that some of the owners were likely operating small businesses out of their homes. (The Coxes had previously submitted the affidavit of Curtis Kincheloe, owner of Coyote Curt's Auto Repair, who affirmed that he operates his business on his residential property.) None of the purported or speculated home business uses, however, appeared to even remotely compare to the scale of the Coxes' commercial enterprise.

[7] Before the April 16 oral argument, the court issued a March 5, 2013 under advisement ruling involving several matters. In its ruling, the court noted that, at a previous oral argument held February 13, 2013, counsel for the Coxes had agreed with Varilek's assertion that the only remaining issue for trial was the Coxes' "affirmative defense that Paragraph 2 [of the Declaration] has been rendered unenforceable through *abandonment*." (Emphasis in original.) The court relied on the parties' representation in its subsequent rulings.

2013, the court granted summary judgment in favor of the Cundiffs, after concluding as a matter of law that Coyote Springs Ranch continued to be a rural, residential environment and, accordingly, the Declaration had not been abandoned.[8]

¶16        Both Varilek and the Cundiffs sought attorneys' fees and costs.  In the meantime, the Coxes filed a motion for new trial.  In a minute entry filed August 25, 2014, the court denied the motion for new trial, ordered the Coxes to pay Varilek attorneys' fees in the amount of $90,490.00 and costs in the amount of $118.00, and declined to address the Cundiffs' application for attorneys' fees and costs at that time.

¶17        On March 20, 2015, the matter was reassigned to Judge Jeffrey G. Paupore.  In a judgment filed April 7, 2015, the trial court denied the Coxes' motion for reconsideration of the August 25, 2014 ruling awarding attorneys' fees to Varilek and awarded attorneys' fees in the amount of $258,986.52 and costs in the amount of $4,117.74 to the Cundiffs.[9]  On May 5, 2015, the trial court entered a separate judgment in favor of Varilek, awarding him the amount of attorneys' fees and costs previously ordered, for a total judgment of $90,608.00 in his favor.

¶18        The Coxes filed a motion entitled "Motion for New Trial Re: Award of Attorneys' Fees to Cundiff-Plaintiffs Pursuant to Ariz. R. Civ. P. 59(a) and, in the Alternative, Motion to Alter or Amend Judgment Pursuant

---

[8]        At the same time, the court denied as moot a motion by Varilek to "Require Defendants Cox to Serve the Indispensable Parties with Documents Comporting with Due Process."  Varilek had argued in the motion that some subdivision property owners might not have been joined as necessary, and their rights could be affected if the Coxes' abandonment defense proved successful, because the Declaration could be deemed to be abandoned as to all property owners.

[9]        The court noted that the billing statements from attorney David K. Wilhelmsen, who originally represented the Cundiffs in this matter, referenced the Cundiffs as the clients, whereas the billing statements of attorney J. Jeffrey Coughlin, who substituted in as counsel for the Cundiffs in April 2009, "identified the client as Alfie Ware, Coyote Springs."  The court stated that it "could find no reference in this lengthy civil litigation case where Mr. Ware was identified as a party Plaintiff.  Therefore, Plaintiff's request for reasonable attorneys' fees under the Coughlin affidavit are denied."

to Ariz. R. Civ. P. 59(l)." The Cundiffs objected and also moved to amend the judgment.

¶19 In a minute entry filed June 10, 2015, the trial court granted the Coxes' motion to strike the Cundiffs' motion to amend the judgment, but also denied the Coxes' motions for new trial and to amend the judgment, explaining in part as follows:

> Coxes seek a new trial based upon alleged inconsistent findings of fact, namely: awarding the Wilhelmson attorneys' fees and costs [to the Cundiffs] but denying Coughlin's attorneys' fees and costs [incurred by the Cundiffs]. Cundiffs oppose a new trial and move the Court to amend the Judgment to allow Coughlin's attorney['s] fees and costs pursuant to Rule 59(l).
>
> . . . .
>
> Both parties freely acknowledge the awarding of attorneys' fees and costs is within the discretion of the Court.
>
> On April 7, 2015, the Court awarded Plaintiffs attorneys' fees and costs in the amount of $263,104.26 against Defendant Coxes. Plaintiffs were seeking an additional $93,944.50 for [] Coughlin's attorney['s] fees and costs. [] Coughlin's attorney['s] fees and costs were denied in part because "the client" was identified as Alfie Ware and because the Court determined the amount that was awarded was reasonable.
>
> Defendants Coxes['] position that the award was inconsistent is unfounded. The Court determined the award of attorneys' fees and costs based upon the totality of the case, including but not limited to[] the complexity of issues, the length of litigation, the pleadings, rulings, attorney's billing statements, affidavits, and previous awards of attorney fees. The fact that Alfie Ware advanced litigation costs was one factor in the Court's decision.

¶20 On June 30, 2015, a judgment submitted by the Cundiffs and entitled "Final Judgment Nunc Pro Tunc in Accordance with the Court's April 7, 2015 Ruling" was filed. The Coxes timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016) and 12-2101(A)(1) (2016).

**ANALYSIS**

I.    *The Trial Court's Consideration of the Motion for Summary Judgment*

**¶21**    The Coxes argue that, because Judge Mackey had already ruled on the issue of waiver/abandonment, the Cundiffs' new motion for summary judgment violated the doctrine of law of the case and constituted an impermissible horizontal appeal. Judge Mackey, however, did not have the benefit of this court's 2010 opinion in *College Book Centers* when he denied the Cundiffs' motion for summary judgment on the issue in April 2005. Further, after the court's ruling, the parties continued to gather evidence they argued either supported or refuted a finding of abandonment that was not presented to the court in 2005. The doctrine of law of the case is a rule of procedure, not of substance, and does not prevent a court from changing a ruling merely because the court ruled on a question at an earlier stage of the proceedings; "[n]or does it prevent a different judge, sitting on the same case, from reconsidering the first judge's prior, nonfinal rulings." *State v. King*, 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994) (citations omitted). The trial court did not err in considering the Cundiffs' subsequent motion for summary judgment on the issue of abandonment. *See Dessar v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965).

II.    *The Trial Court's Grant of Summary Judgment on Abandonment*

**¶22**    The Coxes argue the trial court erred in granting summary judgment because the court ignored evidence they presented in their response to the Cundiffs' motion for summary judgment that showed multiple violations of the Declaration by other property owners in Coyote Springs Ranch—violations the Coxes contend are sufficient to create a genuine issue of material fact on their affirmative defense of abandonment.

**¶23**    We review *de novo* a trial court's grant of summary judgment. *Salib v. City of Mesa*, 212 Ariz. 446, 450, ¶ 4, 133 P.3d 756, 760 (App. 2006). We view the facts and reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was granted. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

**¶24**    Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A trial court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the

proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The mere existence of a scintilla of evidence that creates the slightest doubt as to whether a dispute of material fact exists is insufficient to overcome summary judgment. *Id.* When material facts are not disputed, a trial court may decide the issue as a matter of law. *Ortiz v. Clinton*, 187 Ariz. 294, 298, 928 P.2d 718, 722 (App. 1996).

¶25 Absent an express non-waiver provision, deed restrictions may be considered abandoned or waived "if frequent violations of those restrictions have been permitted." *Coll. Book Ctrs.*, 225 Ariz. at 538-39, ¶ 18, 241 P.3d at 902-03 (quoting *Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, 398, ¶ 21, 87 P.3d 81, 86 (App. 2004)). But when, as here, a Declaration contains a non-waiver provision, restrictions remain enforceable, despite prior violations, as long as the violations do not constitute a "complete abandonment" of the Declaration. *Id.* at 539, ¶ 18, 241 P.3d at 903 (quoting *Burke*, 207 Ariz. at 399, ¶ 26, 87 P.3d at 87). Deed restrictions are considered completely abandoned when "the restrictions imposed upon the use of lots in [a] subdivision have been so thoroughly disregarded as to result in such a change in the area as to destroy the effectiveness of the restrictions [and] defeat the purposes for which they were imposed." *Condos v. Home Dev. Co.*, 77 Ariz. 129, 133, 267 P.2d 1069, 1071 (1954), *quoted in Coll. Book Ctrs.*, 225 Ariz. at 539, ¶ 18, 241 P.3d at 903.[10]

¶26 In evaluating the Cundiffs' motion for summary judgment on the issue of abandonment/waiver, the trial court applied the standard adopted by this court in *College Book Centers* to the intent behind the Declaration of ensuring "a rural, residential environment." The court noted that the Coxes had "based their assertion of the abandonment and waiver of the [Declaration] on 1) an affidavit of Defendant Cox, and 2) a survey of the subdivision properties by a private investigator, Sheila Cahill, and research done by Ms. Cahill through the records of government offices." In examining the evidence proffered by the Coxes, the court found the Coxes' "assessment of the Cahill determinations is troubling as many of the

---

[10] The parties disagree as to the standard of proof for showing abandonment: Varilek argues the proponent of abandonment has the burden of proving it by clear and convincing evidence, and the Coxes maintain the proper burden is a preponderance of the evidence. Neither side points to controlling Arizona law on this issue, and, as the Coxes suggest, we simply apply the standards for determining summary judgment and abandonment as discussed above. In any event, we conclude that the record fully supports the trial court's decision to grant summary judgment.

notations of Cahill indicate conduct not 'intended' to be prohibited under the [Declaration]." The court also found numerous other claimed violations were unsupported and/or involved mere speculation. Although the court also found some observable violations of the Declaration, such as "bottled gas tanks not below ground and trash receptacles visible; in one instance a couch sitting outside, and in another some amount of construction materials located on properties where construction company owners reside," the court further found "no real debate that the property remains rural," and "the only portion of Coyote Springs [Ranch] that has been utterly given over to a non-residential use [with the exception of a church] is that of Defendants Cox; that being their use of their 19 acres for purely commercial purposes." In granting the motion for summary judgment, the court concluded that the items addressed by Cahill and upon which the Coxes relied "do not illustrate, in any fashion, a complete abandonment and thorough disregard of the intention of the Declarants that the property remain rural and residential."[11]

**¶27** The trial court's findings and conclusions are overwhelmingly supported by the record. As the Cundiffs noted in their motion for summary judgment, the DVDs submitted by the Cundiffs reveal "acres and acres of land within the subdivision [that] consist of flat, grassy, fenced, rural, residential properties." The neighborhood continues to have narrow, often dirt, roads and the physical appearance of a rural, residential community. Although a few properties in the Coyote Springs Ranch subdivision apparently do house a small commercial enterprise, nothing in the record supports the conclusion that the fundamental character of Coyote Springs Ranch has changed from that of a rural, residential

---

[11] The Coxes argue that the trial court erred in focusing solely on section two of the Declaration and overlooked their assertions and documentation of violations of other restrictions contained in the Declaration. The Coxes' argument appears to run counter to their previous concession that the only remaining issue for trial was their affirmative defense that section two of the Declaration had been rendered unenforceable through abandonment, and section eighteen of the Declaration, which provides that "[i]nvalidation of any of the restrictions, covenants or conditions above by judgment or court order shall in no way affect any of the other provisions hereof, which shall remain in full force and effect." Moreover, the record is clear that the trial court carefully considered the Coxes' allegations of other violations of the Declaration before rejecting their defense of abandonment.

neighborhood.[12]  The trial court correctly applied the standards adopted in *College Book Centers* and *Condos* to the intent behind the Declaration of ensuring "a rural, residential environment," and did not err in concluding as a matter of law that the Declaration had not been completely abandoned and in granting summary judgment in favor of the Cundiffs.[13]

### III.    *Joinder of Indispensable Parties*

**¶28**        The Coxes also argue that the trial court's entry of summary judgment should be considered "invalid" because not all Coyote Springs Ranch property owners had been joined in the litigation when summary judgment was granted, and pursuant to the trial court's prior order and Rule 19, Ariz. R. Civ. P., all necessary and indispensable parties were required to be included before entry of an order summarily disposing of the case.[14]  The Coxes' argument ignores the record in this case—including the

---

[12]        Moreover, as the trial court correctly recognized, many of the violations of the Declaration as alleged by the Coxes involve speculation and/or do not appear to be prohibited by a careful reading of the Declaration.  Also, as Conlin noted in his affidavit, "[t]he covenant against trade, business, commercial or industrial enterprises was not intended to prohibit against landowners or occupiers from maintaining a home-office in their residence, from parking or maintaining their business vehicles or equipment on their property, or from indicating to the public that they had a home office at their residence."

[13]        Relying on section eighteen of the Declaration, the Coxes argue "complete" abandonment of the Declaration is not required to prove invalidation of section two of the Declaration.  But nearly all of their evidence of violations consists of purported violations of sections other than section two, and thus, applying section eighteen would simply mean that if one of the other sections were found to be invalid through a judgment or court order, section two would continue to be valid.  Moreover, to invalidate section nineteen of the Declaration—the non-waiver provision, which applies to all other sections of the Declaration—the Coxes still needed to show complete abandonment of the Declaration itself.

[14]        The Coxes assert, without citation to the record, that "[m]any property owners in Coyote Springs [Ranch] who have an interest in this matter were never advised of the lawsuit [or] had the opportunity to appear and state their position"; however, the only property owner the Coxes identify as an "example" supporting their assertion is Jerry Carver, who

Cundiffs' efforts at joining all parties and the Coxes' subsequent representation to the court—as well as the court's correct finding that summary judgment in favor of the Cundiffs made the Coxes' argument moot.

**¶29**     The indispensability of parties is a question of law, which we review *de novo*. *Gerow v. Covill*, 192 Ariz. 9, 14, ¶ 19, 960 P.2d 55, 60 (App. 1998) (citations omitted).

**¶30**     In this case, on remand from this court's May 24, 2007 memorandum decision, the trial court found that all property owners subject to the Declaration were indispensable parties, and ordered the Cundiffs to serve those necessary and indispensable parties with a summons, a copy of the First Amended Complaint, and a notice approved by the court. As ordered, the Cundiffs filed with the court in both paper and electronic form the list of Coyote Springs Ranch property owners, sent requests to the property owners to accept service of the aforementioned documents, and filed all acceptances received with the court.

**¶31**     Next, as ordered by the court, the Cundiffs identified the property owners who refused to accept service, sent them the court-ordered documents by certified mail, and filed all signed return receipts received with the court. Then, as ordered, the Cundiffs identified any owners who had both refused to sign the acceptance of service and refused to claim or sign their certified receipts, delivered the service packets to a process server for personal service, and filed with the court the certificates of service for those property owners the process server was able to serve.

**¶32**     After exhausting the other methods of service, the Cundiffs requested permission to serve the remainder of the necessary and indispensable parties by publication. The court found the Cundiffs had

appeared at the April 16, 2013 oral argument and advised the court he would not concede the court had jurisdiction over him. Carver was served, however, had notice of the proceedings, and was provided the opportunity to state his position at oral argument. The Coxes also rely on Varilek's "Motion to Require Defendants Cox to Serve the Indispensable Parties with Documents Comporting with Due Process," in which he argued in part that service on some property owners might be defective because it appeared to him that, in some instances, only one of two spouses had been served or property owners who had recently purchased property in the subdivision might not have been served. Varilek did not, however, specifically identify any such property owners.

taken substantial steps to join all of the necessary and indispensable parties in a timely manner, noted that there was a discrepancy between the clerk of the court's records and the number of owners the Cundiffs had served, ordered the Cundiffs' counsel to meet with the clerk to reconcile the differences, and granted the Cundiffs permission to serve the remaining property owners by publication. Counsel for the Cundiffs met with the clerk of the court, reconciled the differences, filed a revised property list, and ultimately filed a proof of service by publication on all remaining property owners with the court. The Cundiffs then filed a notice of compliance with the court's service order.

**¶33** Later, when asked by the court if all necessary parties had been joined as parties to the lawsuit, counsel for the Coxes responded affirmatively. *See supra* note 3. Although counsel did express concern that no lis pendens had been recorded to warn subsequent purchasers of the lawsuit, the Coxes point to no subsequent purchasers who were not joined or otherwise put on notice. The record as provided this court does not support the Coxes' argument.

**¶34** Moreover, even if some property owners were not joined, the court did not err in deciding the motion for summary judgment and concluding Varilek's motion was moot. Varilek had argued that property owners who had not been joined could have their property rights negatively affected if the Coxes' abandonment defense proved successful, because the Declaration could be deemed to be abandoned as to all property owners. Varilek's argument essentially echoed the concerns we identified in our previous memorandum decision. *See Cundiff*, 1 CA-CV 06-0165, at ¶¶ 32 ("A ruling in this case that the restrictions have been abandoned and are no longer enforceable against the Coxes' property would affect the property rights of all other owners subject to the Declaration."), 35 ("[E]ven if a ruling in favor of the Coxes on their affirmative defense of abandonment were to apply only to the Coxes' property, all property owners['] rights would still be affected simply by the Coxes' continued use of their property, or by any future use adverse to the restrictions."). In this case, however, any concern about the erosion or loss of property rights is not implicated because the trial court concluded the Declaration had not been abandoned. Thus, the Coxes' reliance on *Karner v. Roy White Flowers, Inc.*, 527 S.E.2d 40

(N.C. 2000), is misplaced.[15]  The elimination of the Coxes' abandonment defense rendered any argument regarding joinder moot.[16]

### IV.     The Trial Court's Awards of Attorneys' Fees

#### A.     Award of Attorneys' Fees to the Cundiffs

**¶35**          The Coxes next argue that the trial court abused its discretion in awarding attorneys' fees to the Cundiffs for the legal services of Wilhelmsen because a nonparty, Alfie Ware, helped fund the Cundiffs' litigation, and the Cundiffs have no enforceable obligation to repay Ware.

**¶36**          A court has discretion in determining whether to award attorneys' fees pursuant to A.R.S. § 12-341.01. *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 327, ¶ 48, 283 P.3d 45, 58 (App. 2012).  In general, we review an award of attorneys' fees under § 12-341.01 for an abuse of that discretion, and will affirm unless no reasonable basis exists for the award. *Hawk v. PC Vill. Ass'n*, 233 Ariz. 94, 100, ¶ 19, 309 P.3d 918, 924 (App. 2013). For a party to recover attorneys' fees, two specific requirements must be met:  (1) an attorney-client relationship between the party and counsel, and (2) a genuine financial obligation on the part of the party to pay such fees. *Moedt v. Gen. Motors Corp.*, 204 Ariz. 100, 103, ¶ 11, 60 P.3d 240, 243 (App. 2002) (citing *Lisa v. Strom*, 183 Ariz. 415, 419, 904 P.2d 1239, 1243 (App. 1995)).

**¶37**          The Coxes do not dispute that the Cundiffs have maintained the necessary attorney-client relationship with their attorneys.  Moreover,

---

[15]      *Karner* held that "[a]n adjudication that *extinguishes* property rights without giving the property owner an opportunity to be heard cannot yield a 'valid judgment.'"  527 S.E.2d at 44 (emphasis added).

[16]      Further, contrary to the Coxes' suggestion, the ruling does not prevent any other property owners from attempting to show abandonment of the Declaration in the future.  Also, we reject the Coxes' suggestion that property owners who wish to or currently use their property in ways that violate the language of the Declaration should be insulated from future lawsuits.  We additionally reject the Coxes' argument that the doctrine of law of the case should have prevented the court from finding the issue of joinder moot.  *See generally King*, 180 Ariz. at 279, 883 P.2d at 1035; *Dessar*, 353 F.2d at 470; *see also Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 279, 860 P.2d 1328, 1332 (App. 1993) (providing exceptions to law of the case doctrine).

the Cundiffs submitted an affidavit in support of their attorneys' fees request stating that, although Ware had helped to fund the litigation, the Cundiffs had entered an agreement in 2003 "to repay Alfie Ware for all of the attorney's fees and costs that he would pay for the litigation," and that they had in fact paid Ware a portion of the amount owed. Although the Coxes rely on *Lisa* for their argument that the Cundiffs' agreement with Ware renders the Cundiffs' obligation illusory, *Lisa* is distinguishable. In *Lisa*, the court noted that "the Lisas candidly admit that, although there was an oral fee agreement, neither Mrs. Lisa nor the community would reimburse either Mr. Lisa [an attorney] or Lisa & Associates for any time expended, absent an award of fees by the court." 183 Ariz. at 420, 904 P.2d at 1244. On this record, we are not presented with the same set of facts, and find no error in the trial court's decision to award attorneys' fees to the Cundiffs.

### B. Reasonableness of the Fees Award

**¶38** The Coxes also argue the amount of fees awarded to the Cundiffs was unreasonable because some of the work was unnecessary, duplicative, or for issues on which the Cundiffs did not prevail. We disagree.

**¶39** Any attorneys' fees award must be reasonable. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 185-86, 673 P.2d 927, 929-30 (App. 1983). In considering the reasonableness of a fee award, the court must determine whether the hourly rate is reasonable and whether the hours expended on the case are reasonable. *Id.* at 187-88, 673 P.2d at 931-32. "[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories." *Id.* at 189, 673 P.2d at 933.

**¶40** The record indicates the trial court fully and carefully considered the reasonableness of the Cundiffs' attorneys' fees request and, after such consideration, awarded only a portion of the amount requested. Further, the Cundiffs fully achieved the result they sought in the litigation. On this record, we find no abuse of the trial court's discretion.

### C. Award of Attorneys' Fees to Varilek

**¶41** The Coxes also argue the trial court erred in awarding attorneys' fees to Varilek because he asserted he was not a party to the case.

**¶42** The record is clear, however, that after being served and joined in this case in 2010, Varilek specifically requested alignment with the

Cundiffs, and he actively participated throughout the remainder of the case, even after his lawsuit against Veres—which was consolidated into this case[17]—was dismissed without prejudice. Moreover, although the Coxes point out that Varilek argued at the February 13, 2013 oral argument that "it's our position that we are not a party" and "have simply aligned with the plaintiffs," the trial court rejected that position in granting dismissal of the consolidated case; instead, the court made clear in its March 5, 2013 under advisement ruling that it considered Varilek to be an active party to the litigation:

> WHILE THE COURT has received the[] "Stipulation to Dismiss Without Prejudice," filed by the Parties in *Varilek v Veres*[] (P1300 CV 2009 0822); that being separately filed litigation previously consolidated with *Cundiff v Cox* (P1300 CV 2003 0399), the Court does not interpret the dismissal of *Varilek*, [*id.*], as making moot Varilek's Response in regard to this immediate issue [allowing Conlin to testify as a witness for the purpose of interpreting the Declaration] or allowing Varilek and/or Veres to extricate themselves from this case, as Varilek and Veres remain necessary Parties to the *Cundiff v Cox*[] litigation.

**¶43** The Coxes further argue Varilek was not eligible for an award of attorneys' fees because he never requested attorneys' fees in a pleading pursuant to Rule 54(g)(1), Ariz. R. Civ. P.[18] However, after Varilek filed his July 1, 2013 motion for an award of attorneys' fees, the Coxes did not assert in their response that Varilek had failed to comply with Rule 54(g). Instead, as they acknowledge, they raised this argument for the first time in their "Motion for Reconsideration Re: August 25, 2014 Ruling Re: Attorneys' Fees Awarded in Favor of Varilek." We generally do not consider arguments on appeal that were first raised in the trial court in a motion for reconsideration, *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240-41 n.5, ¶¶ 15-16, 159 P.3d 547, 550-51 n.5 (App. 2006), and we decline to do so here.

---

[17] Without record support, Varilek asserts that he requested attorneys' fees in his complaint against Veres. The Coxes do not dispute Varilek's assertion.

[18] Varilek first made a claim for attorneys' fees in his joinder to the motion for summary judgment filed by the Cundiffs.

*V.       Costs and Attorneys' Fees on Appeal*

¶44        The parties request costs and attorneys' fees on appeal pursuant to A.R.S. § 12-341.01.  The Coxes are not the prevailing parties, and their request is denied.  Appellees are the prevailing parties; accordingly, in our discretion, we award taxable costs and an amount of reasonable attorneys' fees on appeal to Appellees, contingent upon their compliance with Rule 21, ARCAP.

## CONCLUSION

¶45        The trial court's summary judgment and awards of attorneys' fees are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA